IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANTHONY DOWD | CIVIL ACTION |
|---|---|
| v. | NO. 19-1981 |
| THE CITY OF PHILADELPHIA *doing business as Philadelphia Department of Corrections* | |

MEMORANDUM RE:  MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                                    **August 4, 2020**

I.   INTRODUCTION

In this employment case, Plaintiff Anthony Dowd contends that Defendant, the City of Philadelphia ("the City"), failed to accommodate his disabilities and retaliated against him. Plaintiff filed a Complaint, alleging the following Counts:

1. **Count I**:  Disability Discrimination in violation of 42 U.S.C. §§ 1981 and 1983;

2. **Count II**:  Violations of the Philadelphia Fair Practices Ordinance ("PFPO");

3. **Count III**:  Disability Discrimination and Maintenance of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964;

4. **Count IV**:  Violations of the Americans with Disabilities Act ("ADA"); and

5. **Count V**:  Violations of the Pennsylvania Human Relations Act ("PHRA.")

(ECF 1, Ex. A ("Compl."))

Before the Court is the City's Motion for Summary Judgment on all Counts.  Plaintiff has conceded his claims under Section 1981, Section 1983, and Title VII, as well as his Hostile Work Environment claims under the ADA, PHRA, and PFPO.  (ECF 41 "Pl.'s Opp'n" 10.)  For the reasons stated below, the remainder of the City's Motion will be denied.

1

## II.  FACTS AS UNDISPUTED OR AS ALLEGED BY PLAINTIFF

Plaintiff began his employment with the City in 1995, and worked at the Juvenile Justice Center in West Philadelphia as a Youth Detention Counselor II.  In 2009, Plaintiff was diagnosed with claustrophobia and began seeking an accommodation for his disability.  (ECF 41-2 "Pl.'s SUMF" ¶¶ 3, 6.)  Plaintiff asserts that the City either rejected his proposed accommodations, or never meaningfully responded to them.  (Pl.'s SUMF ¶ 7.)  Plaintiff ended up taking a leave of absence.

In 2015, Plaintiff returned to work, and was injured in a riot.  He suffered a torn rotator cuff, a herniated disk, and experienced sciatic nerve pain.  (Pl.'s SUMF ¶ 10.)  Plaintiff was placed on "Injured on Duty" status, and was initially given a light duty assignment.  Eventually, Plaintiff went on a variety of medical leaves.

While on leave, Plaintiff repeatedly sought an accommodation from the City in the form of a light duty position.  (Pl.'s SUMF ¶ 14.)  The City offered Plaintiff a position as a Service Representative located at 15th and Arch Streets.  (Pl.'s SUMF ¶¶ 15, 17.)  Although Plaintiff's doctor (Dr. McCoy) initially approved Plaintiff for the position, when he learned that Plaintiff would need to take public transportation to 15th and Arch, he revoked approval in an April 12, 2017 letter because public transportation could aggravate Plaintiff's injuries.  (Pl.'s SUMF ¶ 21.)  The City's search for a suitable position appears to have ceased after offering Plaintiff the Service Representative position multiple times.

Plaintiff later toured the Service Representative work area, and had a panic attack in the vicinity of the workspace.  (Pl.'s Opp'n, Ex. K.)  As a result, Dr. McCoy wrote a report stating that Plaintiff would need further accommodation before the Service Representative position could be considered.  (Pl.'s Opp'n, Ex. K.)  As Plaintiff continued to seek an accommodation from the City,

Dr. McCoy wrote another note on May 7, 2019, outlining Plaintiff's needs should he return to work. (Pl.'s SUMF ¶ 25.)

In April of 2019, the City determined, based on a 2017 evaluation by a City doctor, that Plaintiff could return to work. (Pl.'s Opp'n, Ex. Q.) In a letter on May 3, the City informed Plaintiff that he would be given no more leave, and that he would need to report to work on May 10, 2019. The City offered Plaintiff the Service Representative position as a temporary demotion, and asked him to confirm by May 8 whether he would accept the position and return to work. (Pl.'s Opp'n, Ex. S.)

Plaintiff emailed the City's HR representative, Judith Blanks, on May 6, asking for clarification about his demotion. Blanks did not respond, so Plaintiff followed up the next day. When Blanks still did not respond, Plaintiff emailed another City employee, but still received no response. Eventually, on May 8, Plaintiff emailed Blanks to decline the Service Representative position and request to be reinstated to his previous position as a Youth Detention Counselor II. Blanks returned Plaintiff's email within minutes and interpreted his email as a rejection of the City's offer. (Pl.'s Opp'n, Ex. Q.) Blanks then issued paperwork terminating Plaintiff's employment, effective immediately. (Pl.'s Opp'n, Ex. T.)

Plaintiff emailed Blanks again on May 9, 2019, stating that he was willing to accept the Service Representative position if he would otherwise be fired. The next day, Plaintiff went to the 15th and Arch building to report for work, but had a panic attack and had to go to the hospital. He emailed Blanks, who asked where he was. Blanks eventually found out about Plaintiff's panic attack from a colleague. (Pl.'s Opp'n, Ex. Q.) Plaintiff attempted to return to work again on May 13, but had another panic attack. He emailed Blanks to inform her that he planned to try to return again, and Blanks informed Plaintiff that he had been fired. (ECF 45 "Pl.'s Surreply," Ex. C.)

### III. PROCEDURAL HISTORY

Plaintiff filed a charge of discrimination with the EEOC on April 9, 2019, and received a right to sue notice eight days later. (Pl.'s Opp'n, Exs. O, X.) Plaintiff filed a Complaint in the Philadelphia Court of Common Pleas on April 26, 2019, and the City timely removed the Complaint to this Court. (ECF 1.) Following discovery, the City filed a Motion for Summary Judgment. (ECF 38.) Plaintiff filed a Response in Opposition, (ECF 41), the City filed a Reply, (ECF 42), and Plaintiff filed a Surreply, (ECF 45.) The Court held argument on the City's Motion on July 30, 2020.

### IV. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a

genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute.  Fed. R. Civ. P. 56(c).

## V. DISCUSSION

As is fairly obvious from the above discussion of the facts, there are many disputed facts in this case.  First of all, there is a genuine issue of fact as to whether Dr. McCoy's opinions stating that Plaintiff could not accept the Service Representative position because he would have to take public transportation, and that the work environment could aggravate his claustrophobia, were reasonable.  A jury will need to decide whether Dr. McCoy was appropriately advised by Plaintiff as to what the Service Representative position entailed, and whether his condition continued into the 2019 period when Plaintiff's employment came to an end.  If a jury were to find Dr. McCoy's opinions were not reasonable, and Plaintiff had grounds to know they were not reasonable, the jury could find against Plaintiff on the entire case.

Further, there are substantial issues as to what would have been a "reasonable accommodation" in this case, given Plaintiff's alleged medical condition, and the City's communications with Plaintiff, or the lack thereof.  Given the factual disputes in this case, a reasonable jury could find that the Service Representative position was not a reasonable accommodation, and that the City disengaged from the interactive process.  This cannot be decided as a matter of law.

There are further issues as to when Plaintiff was actually terminated as an employee, and what was the motivation behind the City's action. Applying the McDonnell Douglas burden-shifting framework, it would appear clear that Plaintiff has sufficient facts to establish a prima facie case and that the City has sufficient facts to show a non-retaliatory explanation for its conduct. The burden then shifts to the Plaintiff to prove pretext. The Court finds under substantial Third Circuit authority that the temporal proximity of the City's conduct to Plaintiff's attempts to find a reasonable accommodation could support a finding of pretext.[1] See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279–80, 286 (3d Cir. 2000) (holding that temporal proximity can provide a causal link between protected activity and an adverse employment action, and that such proof may also weigh on pretext). This issue also cannot be decided as a matter of law.

The City may have a point in its argument that Plaintiff was attempting to continue to get paid as a City employee without doing any work, that he was not really interested in accepting any position, and his continued negotiations were not sincere. On the other hand, a jury might find that Plaintiff was sincere and reasonable in his requests, and the City acted improperly.

As far as the exhaustion issue goes, the Third Circuit has recently held in Mandel v. M & Q Packaging Corp. that the plaintiff had not exhausted her administrative remedies based on the fact that her EEOC charge did not include specific allegations of retaliation, and she did not check the retaliation box on the charge form. 706 F.3d 157, 163–64 (3d Cir. 2013). The timeline of this case, however, does not allow the Court to make a similar conclusion as a matter of law at this time. Because the City terminated Plaintiff's employment after the administrative process had already run its course, the "slim likelihood of [a second EEOC charge resulting in] successful

---

[1] Plaintiff has identified his May 7, 2019 accommodation request as the protected activity underlying his retaliation claim. (Pl.'s Opp'n 7.)

conciliation does not justify forcing [Plaintiff] to wait an additional 180 days to" bring his retaliation claim. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).

For all these reasons, the City's Motion for Summary Judgment on Plaintiff's failure to accommodate and retaliation claims under the ADA, PHRA, and PFPO will be denied.

## VI.    CONCLUSION

For the reasons stated above, the City's Motion for Summary Judgment will be granted as to Plaintiff's claims under Section 1981, Section 1983, and Title VII, as well as to Plaintiff's Hostile Work Environment claims under the ADA, PHRA, and PFPO. The City's Motion for Summary Judgment will be denied as to Plaintiff's remaining claims under the ADA, PHRA, and PFPO. An appropriate Order follows.

O:\CIVIL 19\19-1981 Dowd v City of Phila\19cv1981 Memo re Motion for Summary Judgment.docx